UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSEPH OCCHIONE,

                Petitioner,

    – against –

MICHAEL CAPRA, *Superintendent of*
*Sing Sing Correctional Facility*,

                Respondent.

**MEMORANDUM & ORDER**

 14-CV-3637

**Appearances**

    **For Petitioner:**

        Jeffrey G. Pittell
        Maher & Pittell, LLP
        299 E. Shore Road
        Great Neck, NY 11023
        (516) 829-2299
        jp@jpittell.com

    **For Respondent:**

        Daniel Stephen Bresnahan
        Office of the District Attorney, Queens County
        125-01 Queens Boulevard
        Kew Gardens, NY 11415
        (718) 286-7046
        dsbresnahan@queensda.org

**J ACK B. W EINSTEIN, Senior United States District Judge:**

## Table of Contents

I.    Introduction ....................................................................................................... 2
II.   Crime of Conviction ........................................................................................ 3
III.  Procedural History .......................................................................................... 6
  A.  Grand Jury Indictment .................................................................................. 6
  B.  Arraignment, Pre-Trial Applications and Dispositions .................................. 7
  C.  Pretrial Hearings .......................................................................................... 8
    1.  *Dunaway* Hearing ..................................................................................... 8
    2.  *Huntley* Hearing ....................................................................................... 8
    3.  *Sandoval* Hearing ..................................................................................... 9
  D.  Jury Selection ............................................................................................... 9
  E.  Trial and Sentencing ................................................................................... 11
  F.  Direct Appeals ............................................................................................ 14
  G.  Motion to Vacate Conviction ....................................................................... 15
  H.  Instant Petition ........................................................................................... 16
IV.  Applicable Standard of Review .................................................................... 17
  A.  Antiterrorism and Effective Death Penalty Act ........................................... 17
    1.  "Contrary to" Clause ................................................................................ 18
    2.  "Unreasonable Application" Clause ......................................................... 18
  B.  Deference to State Court ............................................................................. 19
  C.  Harmless Error ........................................................................................... 21
V.   Ineffective Assistance of Counsel ................................................................ 21
  A.  Law ............................................................................................................. 21
    1.  Standard ................................................................................................... 22
    2.  Application of Standard by Court of Appeals for the Second Circuit ......... 24
    3.  Application of Standard by District Courts in the Second Circuit .............. 25
  B.  Application .................................................................................................. 26
VI.  Denial of Right to Testify Before Grand Jury ............................................... 29
  A.  Law ............................................................................................................. 29
  B.  Application .................................................................................................. 30
VII. Reverse *Batson* Challenge .......................................................................... 30
  A.  Law ............................................................................................................. 30
  B.  Application .................................................................................................. 33
VIII. Sentencing Persistent Violent Felony Offenders and *Apprendi* Doctrine ....... 33
  A.  Law ............................................................................................................. 33
  B.  Application .................................................................................................. 35
IX.  Conclusion ................................................................................................... 35

## I.    Introduction

Petitioner Joseph Occhione seeks a writ of *habeas corpus*. *See* 28 U.S.C. §2254(d). It is

denied.

He is currently serving a sentence of sixteen years to life, imposed on July 23, 2008, for burglary, criminal mischief, criminal possession of stolen property, resisting arrest, and possession of burglar's tools. He has served some seven years at Sing Sing Correctional Facility.

Asserted are four grounds for relief: (1) ineffective assistance of counsel due to trial counsel's cumulative errors; (2) denial of the right to testify before the grand jury; (3) failure of the trial court to sustain a peremptory challenge to a juror of Indian descent during jury selection; and (4) violation of the right to due process resulting from the trial court's implementation of New York Penal Law's persistent violent felony offender provision during sentencing.

Each of petitioner's claims fail.

## II.    Crime of Conviction

On May 14, 2007, at approximately 1:00 p.m., in a townhouse located in Flushing, Queens, Bik Ying Chan's lunch was interrupted when she heard a persistent loud noise. *See* Trial Transcript 437:19–438:22, June 26–July 1, 2008, *People v. Occhione*, Queens Cnty. Indict. No. 1383/07 (N.Y. Crim. Ct.) ("*Occhione I*"), ECF No. 8-7 at 72–199, ECF No. 8-8 at 1–191, ECF No. 8-9 1–93 ("Trial Tr."). Looking out of her kitchen window, she saw a bald man setting down a metal grate next to a tree in the backyard. *Id.* at 439:10–441:2. She recognized the grate as the one covering a bathroom window in her neighbor's house. *Id.* at 441:5–6. Frightened and concerned, Chan phoned her neighbor, Sandy Shi, at her work. *Id.* at 443:6–14. Chan had observed the man for only a moment—too quickly to identify him except by his baldness. *Id.* at 441:3–4.

Shi immediately called 911 to report the potential burglary. *Id.* at 461:22–462:8. The report was forwarded to Sergeant George Fountaulakis, Officer Jared Rothschild, and Officer McManus, all members of the "Burglary Apprehension Team." *Id.* at 642:1–7.

Four blocks away from the Shi residence when the notification was received, the officers arrived at 58–27 150th Street in less than sixty seconds.  *Id.* at 539:16–18.  Riding in an unmarked police vehicle, the plainclothes officers saw petitioner, a bald Caucasian man in his fifties, on top of Shi's backyard fence.  *Id.* at 644:16–645:7.  They watched him dismount the fence and walk to a white SUV parked on the sidewalk.  *Id.* at 645:13–16.

McManus, angling the police car in front of the white SUV, blocked petitioner's escape route.  *Id.* at 578:2–13.  As petitioner entered the passenger side of the SUV, Fountaulakis and Rothschild exited the car, calling out, "Police!"  *Id.* at 542:6–8.  Petitioner fled.  *Id.* at 542:11–13.

McManus stayed with the SUV as Fountaulakis and Rothschild pursued the petitioner on foot, yelling, "Police!  Stop!"  *Id.* at 543:21–544:4, 646:22–24.  Nearing petitioner, Rothschild tripped.  *Id.* at 549:4–9.  McManus then joined the pursuit.  *Id.* at 592:7–10.  In the interim, the SUV departed.  *Id.* at 598:14–18.

When the officers surrounded petitioner, he raised a crowbar above his head.  *Id.* at 647:20–15.  They drew their weapons; he then threw the crowbar down and lay on the ground, where he was handcuffed.  *Id.* at 649:18–650:8.  A search revealed two pairs of gloves, a cell phone, an envelope filled with Chinese currency, a separate envelope filled with United States currency, and boxes filled with jewelry.  *Id.* at 547:12–548:9.

Racing home from work, Shi arrived at her residence one half hour after the burglar had first been sighted.  *Id.* at 462:12–13.  Officer Fountaulakis and a number of other police officers were present.  *Id.* at 462:14–15.  Shi let the officers into her home.  *Id.* at 463:7–14.

Shi called her sister, Hao Ting Shi ("Shi's sister"), who lived in the basement apartment.  *Id.* at 465:5–9.  An hour later, Shi's sister arrived.  *Id*. at 465:16–18.  She discovered that her

bedroom had been ransacked. *Id.* at 494:20–25. Drawers from her dresser and desk had been taken out and flipped over. *Id.* at 507:5–508:18. Items were strewn all over the bedroom. *Id.* at 494:20–25. The chaotic state of the apartment made it impossible for her to tell whether anything had been taken. *Id.* at 495:3–7.

At the police station, Shi's sister identified her cell phone, envelopes of currency, and jewelry, which had been found on petitioner. *Id.* at 495:10–17. She valued the jewelry at approximately $3,500. *Id.* at 497:21–24.

Officer Laurendi then promptly began an interrogation of petitioner. *Id.* at 611:12–23. At first, Laurendi was alone in a room with petitioner; no notes were taken and no record made. *Id.* at 634:22–635:2. According to Laurendi, petitioner admitted to being in possession of Shi's sister's property and told the officer that when he had tried to enter the SUV, the driver would not let him in. *Id.* at 619:24–620:9. Laurendi's report of the initial interrogation was written at 4:30 p.m. that afternoon. *Id.* at 635:22–636:1.

About 7:00 p.m. that evening, Fountaulakis bought sandwiches, sharing them with petitioner. *Id.* at 661:21–662:6. Initially, their chitchat was about the respective neighborhoods in which each had grown up. *Id.* at 662:7–11. Steering the conversation to the burglary, Fountaulakis reported that petitioner told him the following:

> Mr. Occhione explained that he was in a white SUV with an individual by the nickname of [B]ingo, they were going to target an Asian home. They were driving in the neighborhood of Flushing . . . where they observed a female get into her vehicle and back out of her driveway. This female happened to be Asian . . . .
>
> Mr. Joseph Occhione exited that SUV. He rang the doorbell of the house where the woman just came out of[.] [N]o one answered the door. At that point he stated he went over the gate and with a crowbar removed the gate around the window of the bathroom, within fifteen seconds, and entered the residence through that bathroom window.

5

He stated that he removed some jewelry boxes. He saw some envelopes with money. He wasn't sure of the amount of money or what type of currency. He said he took that and he exited the location and basically we are very lucky we got him.

*Id.* at 662:21–663:13. The report of the conversation was written four days later, after Fountaulakis had spoken with the Assistant District Attorney. *Id.* at 680:7–19.

## III. Procedural History

### A. Grand Jury Indictment

On May 24, 2007, ten days after the burglary, petitioner was indicted on the following nine charges:

- Burglary in the First Degree (two counts), *see* N.Y. Penal Law § 140.30(2)–(3);

- Burglary in the Second Degree (one count), *see* N.Y. Penal Law § 140.25;

- Assault in the Second Degree (two counts), *see* N.Y. Penal Law § 120.05(2) & (6);

- Criminal Possession of Stolen Property in the Third Degree (one count), *see* N.Y. Penal Law § 165.50;

- Criminal Possession of Stolen Property in the Fifth Degree (one count), *see* N.Y. Penal Law § 165.40;

- Criminal Mischief in the Third Degree (one count), *see* N.Y. Penal Law § 145.05(2);

- Resisting Arrest (one count), *see* N.Y. Penal Law § 205.30;

- Possession of Burglar's Tools (one count), *see* N.Y. Penal Law § 140.35; and

- Criminal Possession of a Weapon in the Fourth Degree (one count), *see* N.Y. Penal Law § 265.01(2).

*See* Indictment, May 24, 2007, *Occhione I*, ECF No. 8-2 at 2–9. Petitioner did not testify before the grand jury. *See* Grand Jury Trial Transcript, May 18, 2007, *Occhione I*, ECF No. 8-1 at 47–95.

### B. Arraignment, Pre-Trial Applications and Dispositions

On June 1, 2007, one week after petitioner had been indicted, he was arraigned. *See* Web Appearance Detail, n.d., *Occhione I*, ECF No. 8-2 at 1. He orally objected that he had been denied the right to testify before the grand jury. *See* Occhione Affidavit in Support of 440 Motion to Vacate Judgment 9, Mar. 11, 2013, *Occhione I,* ECF No. 8-1 at 139–153 ("Occhione Aff."). A new attorney was appointed by the presiding judge to represent petitioner. *Id.*

Ten days later, on July 11, 2007, petitioner's counsel sought the following: (1) inspection and release of the grand jury minutes and charge; (2) a bill of particulars; (3) *Dunaway*, *Huntley*, and *Sandoval* hearings, *see infra* Part III.C; and (4) dismissal of multiple charges, including Criminal Possession of Stolen Property in the Fifth Degree, Burglary in the First Degree, and Assault in the Second Degree. *See* Petitioner's Notice of Omnibus Motion 1–2, July 10, 2007, *Occhione I*, ECF No. 8-2 at 20–23; *see also* Santos Affirmation in Support of Omnibus Motion 3, ECF No. 8-2 at 23–33.

Dismissal was granted as to Criminal Possession of Stolen Property in the Fifth Degree and the charge vacated. *See* Omnibus Motion Decision 1, Aug. 17, 2007, *Occhione I*, ECF No. 8-2 at 35–37. Petitioner was granted a bill of particulars and his request for *Dunaway*, *Huntley*, and *Sandoval* hearings. *Id.* at 2–3. The other requests were denied. *Id.*

Petitioner then filed a *pro se* motion to dismiss the indictment, alleging that his counsel did not allow him to testify before the grand jury. *See* Motion to Dismiss Indictment for Failure to Testify at Grand Jury, Aug. 31, 2007, *Occhione I*, ECF No. 8-2 at 11. The motion was denied orally on September 25, 2007. *See* Hearing Transcript for Motion to Dismiss Indictment 4:22–

5:1, Sept. 25, 2007, *Occhione I*, ECF No. 8 at 145–50.  As required by section 190.50(c) of New York's Criminal Procedure Law, it had not been filed within five days of the arraignment.  *Id.*

### C.  Pretrial Hearings

#### 1.  *Dunaway* Hearing

Two months after the denial of petitioner's request to dismiss the indictment, a hearing was conducted on petitioner's claim that there was no probable cause to arrest.  *See Dunaway* Hearing Transcript, Nov. 20, 2007, *Occhione I*, ECF No. 8-5 at 1–39; *Dunaway v. New York*, 442 U.S. 200 (1979).  The court found that the police had probable cause to arrest petitioner.  *See* Judicial Hearing Officer Report on Motion for *Dunaway* and *Huntley* Hearings 4, Jan. 15, 2008, *Occhione I*, ECF No. 8-2 at 92–96 ("*Dunaway* and *Huntley* Report"); Order of the Court on *Dunaway* and *Huntley* Hearings 1, Jan. 16, 2008, *Occhione I*, ECF No. 8-2 at 90 ("*Dunaway* and *Huntley* Order").

#### 2.  *Huntley* Hearing

One month later, a *Huntley* hearing was held to determine whether petitioner's statements made to police were involuntary.  *See Huntley* Hearing Transcript, Dec. 20, 2007, *Occhione I*, ECF No. 8-5 at 40–56 ("*Huntley* Hr'g Tr."); *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965).  At the December 20, 2007 hearing, Detective Laurendi testified that he had read petitioner his Miranda rights, and that petitioner had initialed next to each statement read by the detective.  *See Huntley* Hr'g Tr. 44:9–14, 45:4–46:19.

Fountaulakis testified:

> Basically, [petitioner] started saying how he is a part of, I would say, a crew of people, that's how he described it, and that crew is like a four-man unit.  They have police scanners.  They are aware of our precinct sectors, our precinct boundaries.  They know when police officers are dispatched to different jobs by understanding our radio codes, as well.

> . . . They . . . operate targeting Asian homes because they believe
> Asian Families carry more money, more jewelry, carry cash in
> their homes, and what they do is they drive around and look for
> target locations owned by Asians.
>
> . . . And the only reason he said he was apprehended was because
> the person in the car didn't give him the signal we were 10–84,
> which is a signal for we arrived at the location, the person in the
> car, who was monitoring the radio, didn't hear that from us.

*Id.* at 20:24–22:9. The statements made by petitioner while in police custody were ruled

voluntary and admissible. *See Dunaway* and *Huntley* Report 4; *Dunaway* and *Huntley* Order 1.

### 3. *Sandoval* Hearing

The court informed the parties that the prosecution would be allowed to cross-examine

petitioner about his convictions from 1992 onward should he testify at trial. *See Sandoval*

Hearing Transcript 21:3–8, June 19–24, 2008, *Occhione I*, ECF No. 8-5 at 57–77 ("*Sandoval*

Hr'g Tr."); *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974). Over a twenty-two year period,

stretching from 1981 to 2002, petitioner had been convicted of five misdemeanors and four

felonies, including criminal possession of stolen property, burglary, and attempted burglary. *See*

*Sandoval* Hr'g Tr. 33:2–38:20. The facts underlying the convictions were found inadmissible.

*Id.* at 20:17–20.

### D. Jury Selection

On June 24–26, 2008, jury selection took place. *See* Voir Dire Transcript, June 24–26,

2008, *Occhione I*, ECF No. 8-5 at 77–195, ECF No. 8-6 at 1–204. ECF No. 8-7 at 1–71 ("Voir

Dire Tr."). Petitioner's counsel raised two for-cause challenges. The first was against a potential

juror of Indian descent, Jennifer Partivit. *Id.* at 365:16–17. It was contended that she could not

give a clear opinion about whether she thought defendant should testify. *Id.* at 365:18–366:1.

The court denied the challenge, stating: "[T]here is nothing in her responses to you or anybody

that would demonstrate that she has a state of mind that would prevent her from sitting here as a

fair and impartial juror." *Id.* at 366:14–17. In response, petitioner's counsel exercised a

peremptory challenge against this potential juror. *Id.* at 366:24–25.

A for-cause challenge was raised against a man of Taiwanese descent, Peter Wang:

> I couldn't find him very credible. I don't believe that basically that
> a son of a police officer for four years and in these four years his
> son has never discussed a single case, arrest or day of work with
> him, your Honor. That's one.
>
> Second of all, Judge, I remember . . .when he was being told about
> if he could be fair and impartial, I think he said, "I don't think so."
> So you know he seemed hesitant when that question was posed.
>
> . . . I don't find him to be totally forthcoming in those type of
> answers that were given to him during my voir dire, Judge. That
> would be the grounds of me challenging him for cause, Judge.

*Id.* at 369:1–22. Denying the challenge, the court described the potential juror as "forthright,"

"articulate," and "probably the most intelligent person on the panel." *Id.* at 369:23–370:12.

Petitioner's counsel used his second peremptory challenge against this juror. *Id.* at 370:16–17.

Arguing that the peremptory challenges were being used to discriminate against

individuals of Asian descent, the prosecution raised a *Kern* challenge. *Id.* at 370:18–371:2;

*People v. Kern*, 554 N.E.2d 1235, 1246 (N.Y. 1990). The court agreed. *See* Voir Dire Tr.

372:14–23, 373:10–14. Petitioner's counsel then presented the following facially neutral reasons

for the peremptory challenges:

> Reason for Mr. Wang, I find him not to be credible. I do not
> believe he is the most intelligent member of that panel. I think that
> he was not forthright or forthcoming with the question[s] being
> posed to him, your Honor. He is a gentleman, your Honor, who I
> believe has a predetermination, already been involved in the legal
> process of arrests and testifying, and I do not believe, your Honor,
> that he gave truthful answers, your Honor. That is the opinion of
> the defense.
>
> As to Miss Partivit, and [I] hope I pronounce it correctly, your
> Honor, I clearly remember her wavering on how basically the

> burden of proof and the presumption of innocence and the protection that my client gets by not having to testify, and although the Court did rehabilitate her, she did say, "I don't think so[,]" and I believe the Court is stating through the — these three grounds it's not, "I don't think so," it's yes or no. That's the position of the defense, your Honor. The Court has [its] own perspective and [its] own view on how it views the jurors, your Honor; but I challenged for cause both those individuals based upon my questioning them, listening to their answers from both the Court and the prosecution in this matter, your Honor.

*Id.* at 375:23–376:24.

The peremptory challenge as to Wang was sustained. *Id.* at 379:23–380:5. Rejected was the challenge regarding Partivit, the juror of Indian descent. *Id.* at 380:18–21.

> There was nothing in the record to give one a reason to peremptorily challenge her except her race. . . . The explanation doesn't fit the facts of the case in any event. The reason for the challenge is not based upon evidence. At best, it could be intuition. . . .

*Id.* at 381:9–24.

### E.  Trial and Sentencing

At trial, which started on June 26, 2008 and ended on July 1, 2008, the prosecution called six witnesses:

- Bik Ying Chan:  The woman who first observed the break-in;

- Sandy Chi:  The woman whose home was broken into;

- Hao Ting Shi:  The woman from whom property was stolen;

- Officer Rothschild:  The officer who arrested petitioner;

- Detective Laurendi:  The officer who read petitioner his Miranda rights and first interviewed him at the station house; and

- Sergeant Fountaulakis:  The officer in charge of the unit responsible for arresting petitioner and the one who interviewed petitioner at length the night of the arrest.

*See* Trial Tr. 829:7–16.

Prior to the parties' opening statements, petitioner's counsel informed the court that petitioner's mother overheard juror nine comment on the petitioner's guilt while in the ladies' room. *Id*. at 389:9–390:4. At the request of counsel, juror nine was questioned and excused from service. *Id.* at 407:14–23. Alternate one took her place. *Id.* at 414:23–415:4. Each remaining juror and alternate was questioned about the comment. *Id.* at 408:1–414:22. Only juror ten heard the statement, but she affirmed her impartiality. *Id.* at 404:12–405:25. When asked if she agreed with juror nine's position on petitioner, she explained: "No. I do not. I do not agree with that." *Id.* at 405:15–16.

During trial, petitioner's counsel cross-examined Officer Rothschild about alleged evidence tampering. *Id.* at 603:11–608:18. Noted was that the evidence bag had been vouchered twice. *Id.* at 607:4–7. Requiring further clarity on the matter, the court interrogated the witness:

> THE COURT: What's the difference between the first voucher and the second voucher? The actual difference.
>
> THE WITNESS: The actual difference is it's just redone, and it's more clear to anybody that wants to read the voucher.
>
> THE COURT: Was anything added to it?
>
> THE WITNESS: No, there was nothing added to it.
> . . .
> THE COURT: Is the quantity [of items in the first bag] the same [as the second]?
>
> THE WITNESS: Yes.

*Id.* at 607:24–608:15. The issue was not further pursued by counsel or the court.

A sidebar during the course of summations resulted in an amendment to the indictment. *Id.* at 705:22–707:7. The changes in language to the charges of burglary in the first and second degrees benefitted petitioner. *Id.* at 706:18–19 (removing "remained" from the phrases

"knowingly entered *and* remained unlawfully" and "knowingly entered *or* remained unlawfully" (emphasis added)).  The court provided the following reason for the change:

> Under the case of People v Gaines, G-A-I-N-E-S, Court of Appeals case, presenting the language – I know it's conjunctive.  It's not disjunctive.  Its [sic] when entered or remained unlawfully.  But even so.  You can't have entered and remained.  It's either entered or remained because if you enter – if you enter unlawfully – my understanding of the case law is that you only have remained unlawfully if you entered lawfully.  That's my understanding of the Gaines determination.  So you would have a problem with the indictment as it's presently written so that – you can't have remained unlawfully because then you would have to have entered lawfully.  So it should just be 'entered unlawfully' and the indictment should be amended.
>
> . . . [T]he People have to prove entered – the fact of this case entered unlawfully.  Either he entered unlawfully or he didn't, but if he didn't, then the remains unlawfully is of no consequence.

*Id.* at 705:22–707:7.

Petitioner did not testify at trial, and the defense did not call any witnesses.  *Id.* at 701:23–702:6.  Testimony about petitioner's prior convictions was not introduced.  *See supra* Part III.C.3.  Nor was the information acquired from petitioner about the crew that used police scanners to target Asian homes.  *See supra* Part III.C.2.

The jury convicted petitioner of Burglary in the Second Degree, Criminal Possession of Stolen Property in the Fifth Degree, Criminal Mischief in the Third Degree, Resisting Arrest, and Possession of Burglar's Tools.  *See* Trial Tr. 822:22–825:15.  He was acquitted of Burglary in the First Degree, Assault in the Second Degree, and Criminal Possession of a Weapon in the Fourth Degree.  *Id.*  The charge of Criminal Possession of Stolen Property in the Third Degree was dismissed by the trial court at the conclusion of the State's case.  *Id.* at 701:2–6.

Based upon his prior felony convictions, *see supra* Part III.C.3, petitioner was sentenced as a persistent violent felony offender.  *See* Sentencing Transcript 8:7–11, July 23, 2008,

*Occhione I*, ECF No. 8-9 at 97–109. He received a term of imprisonment of sixteen years to life. *Id.* at 11:10–12:13.

## F.  Direct Appeals

Petitioner appealed to the Supreme Court of the State of New York, Appellate Division, Second Department, on six grounds:  (1) his lack of testimony before the grand jury violated section 190.50 of New York's Criminal Procedure Law, resulting in a defective indictment; (2) he had ineffective assistance of trial counsel when denied the right to testify before the grand jury; (3) the conviction of Criminal Possession in the Fifth Degree should be vacated because the charge had already been dismissed; (4) the trial judge ruled wrongly during jury selection; (5) the conviction of Burglary in the Second Degree was against the weight of the evidence; and (6) the persistent violent felony offender scheme under section 70.08 of New York's Penal Law is unconstitutional because it relies on facts not put before juries. *See People v. Occhione*, 942 N.Y.S.2d 185, 186–87 (App. Div. 2d Dep't 2012) ("*Occhione II*").

The Appellate Division vacated the conviction of Criminal Possession of Stolen Property in the Fifth Degree since the charge "was mistakenly submitted to the jury." *Id.* at 187. Affirming the remainder of the judgment, the Appellate Division wrote:

> The defendant failed to preserve for appellate review his contention that the persistent violent felony offender sentencing scheme under Penal Law § 70.08 violates the principles articulated by the United States Supreme Court[.]  In any event, the contention is without merit[.]
>
> The defendant contends that he was denied his statutory right to testify before the grand jury.  Having failed to move to dismiss the indictment within five days after his arraignment thereon, the defendant waived this contention[.]  Further, contrary to the defendant's contention, his attorney's failure to effectuate his intention to testify before the grand jury, standing alone, did not constitute the denial of effective assistance of counsel.

14

> The defendant's contention that the evidence was legally insufficient to establish his guilt of burglary in the second degree is unpreserved for appellate review[.] In any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt with respect to the count of burglary in the second degree[.] Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence, we are satisfied that the verdict of guilt with respect to the count of burglary in the second degree was not against the weight of the evidence[.]
>
> . . . The defendant's remaining contentions, raised in his *pro se* supplemental brief, are unpreserved for appellate review, and, in any event, without merit.

*Id.* at 186–87 (citations and internal quotation marks omitted).

Petitioner filed a motion to reargue. *See* Defendant's Notice of Motion for Leave to Reargue Appeal, May 24, 2012, *Occhione II*, ECF No. 8 at 185. That motion was denied without opinion. *See* Order and Decision on Motion to Reargue Appeal 1, Aug. 14, 2012, *Occhione II*, ECF No. 8-1 at 96.

The New York Court of Appeals denied petitioner leave to appeal. *See* Order Denying Leave, July 5, 2012, *People v. Occhione*, 973 N.E.2d 769 (N.Y. 2012), ECF No. 8-1 at 136. No explanation was provided. *Id.*

No appeal was taken to the United States Supreme Court.

### G. Motion to Vacate Conviction

On March 11, 2013, petitioner filed a motion in state court to vacate his conviction, claiming that "material evidence adduced at trial . . . was false[,]" and that "[t]he judgment was obtained in violation of [his rights.]" *See* Notice of Motion to Vacate Judgment Pursuant to C.P.L 440.10(1)(c)(h) 1, Mar. 11, 2013, *Occhione I*, ECF No. 8-1 at 137–38; *see also* N.Y. Crim. Pro. Law § 440.10 note (McKinney 2015) (Practice Commentaries).

Petitioner argued that his previous counsel provided ineffective assistance because he had failed to: (1) effectuate his desire to testify before the grand jury and move to dismiss the indictment; (2) conduct a full investigation into petitioner's side of events and build an alibi defense; (3) permit petitioner to testify at trial; (4) object to a jury charge of fifth degree criminal possession of stolen property and the accompanying "recent and exclusive inference" instruction; (5) object to the prosecution's trial exhibits as tampered evidence and raise *Rosario* violations; (6) object when the court amended a defective indictment; (7) object to a tainted jury; (8) properly cross-examine police officers concerning inconsistent statements; and (9) object and submit a motion to dismiss the charge of burglary in the second degree for lack of proof. *See* Occhione Aff. 10–17.

The trial court ruled that petitioner had "failed to demonstrate prejudice under the New York State [t]est for ineffective assistance of counsel and ha[d] also failed to provide objective evidence to support his claims under [f]ederal law. . . . [D]efendant's claim[] of ineffective assistance of counsel [was] deemed meritless." Order and Decision on 440 Motion to Vacate Judgment 5, Oct. 10, 2013, *Occhione I*, ECF No. 8-4 at 17–21.

The Appellate Division denied petitioner leave to appeal. *See* Order and Decision on Appeal, *People v. Occhione*, No. 2014-00710 (N.Y. App. Div. 2d Dep't Apr. 2, 2014), ECF No. 8-4 at 22.

**H. Instant Petition**

On June 5, 2014, petitioner filed a *pro se* petition for a writ of *habeas corpus*. *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus, June 5, 2014, No. 14-CV-3637, ECF No. 1 ("Pet."). Nine ineffective assistance of counsel claims were explicated, all of which had been previously raised at the state level. *Id.* at 3–4; *supra* Part III.G. He additionally sought to overturn the verdict on three other grounds: (1) denial of his right to testify before the grand

jury; (2) denial of the right to due process attributable to the trial court's failure to deny the prosecution's *Batson Kern* objection regarding the juror of Indian descent; and (3) violation of the right to due process stemming from being sentenced as a persistent violent felony offender. *See* Pet. 3–4.

Counsel was appointed on October 15, 2014. *See* Criminal Justice Act, 18 U.S.C. § 3006A; CJA 20 Appointment of Attorney Jeffrey Pittell for Joseph Occhione 1, Oct. 15, 2014, No. 14-CV-3637, ECF No. 11. A memorandum of law in support of the petition for *habeas corpus* was filed on May 8, 2015. *See* Reply Memorandum of Law in Support of Petition, May 8, 2015, No. 14-CV-3637, ECF No. 19 ("Pet'r's *Habeas* Br."). No other filings were made.

## IV. Applicable Standard of Review

### A. Antiterrorism and Effective Death Penalty Act

Petitioner's *habeas* petition is governed by section 2254 of title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal court may grant a writ of *habeas corpus* to a state prisoner on a claim that was "adjudicated on the merits" in state court *only* if it concludes that the adjudication of the claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

"An adjudication on the merits is a substantive, rather than a procedural, resolution of a federal claim." *See Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (citations and internal quotation marks omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v.*

*Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (citations and internal quotation marks omitted); *see also Williams v. Taylor*, 529 U.S. 362, 380 (2000) (federal habeas courts deny relief if it "is contingent upon a rule of law not clearly established by United States Supreme Court precedent at the time the state court conviction became final").

"[W]hen deciding whether a state-court decision was 'contrary to' or an 'unreasonable application of . . . clearly established Federal law,' a federal habeas court will generally consider only those Supreme Court opinions issued prior to the state court's denial of relief." *Duhs v. Capra*, No. 13-CV-1056, 2015 WL 428321, at *15 (E.D.N.Y. Feb. 3, 2015) (citations and internal quotation marks omitted). "But a Supreme Court decision issued after the relevant state court decision may be considered if it *illustrates* the proper application of a constitutional principle." *Id.* (emphasis in original) (citations and internal quotation marks omitted).

### 1. "Contrary to" Clause

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law *or* if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (emphasis added); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002) (same).

### 2. "Unreasonable Application" Clause

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413; *see also Bell*, 535 U.S. at 694 (same); *McMillon v. Culley*, 380 F. App'x 63, 64 (2d Cir. 2010) (summary order) (same). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *Duhs*, 2015 WL 428321 at *14; *see also Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) ("application must be 'objectively unreasonable,' not merely wrong, even 'clear error' will not suffice").

"In determining whether a state court's application of Supreme Court precedent was unreasonable, a habeas court must be guided by the level of specificity of the relevant precedent's holding, because 'the range of reasonable judgment can depend in part on the nature of the relevant rule.'"  *Contreras v. Artus*, 778 F.3d 97, 99 (2d Cir. 2015) (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

> If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.

*Contreras*, 778 F.3d at 99.

### B. Deference to State Court

"Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (citations and internal quotation marks omitted).  Relief is only merited to "guard against *extreme* malfunctions in the state criminal justice systems."  *Greene v. Fisher*, 132 S.Ct. 38, 43 (2011) (emphasis added) (citations and internal quotation marks omitted).

A "federal habeas court may overturn a state court's application of federal law *only* if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents."  *Nevada v. Jackson*, 133 S.Ct. 1990, 1992

(2013) (per curiam) (emphasis added) (citations and internal quotation marks omitted). This "highly deferential standard" gives state-court decisions "the benefit of the doubt." *Hardy v. Cross*, 132 S.Ct. 490, 491 (2011) (per curiam) (citations and internal quotation marks omitted). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. "[W]e cannot grant habeas relief where a petitioner's claim pursuant to applicable federal law, or the U.S. Constitution, has been adjudicated on its merits in state court proceedings in a manner that is not manifestly contrary to common sense." *Santone v. Fisher*, 689 F.3d 138, 148 (2d Cir. 2012) (citations and internal quotation marks omitted).

Entitled to great weight are state court findings of fact. *See* 28 U.S.C. § 2254(e)(1) (factual findings by state court may not be disturbed except upon a showing of "clear and convincing evidence"); *Smith v. Phillips*, 865 F. Supp. 2d 271, 278–79 (E.D.N.Y. 2012) (same), *aff'd sub nom. Smith v. Scully*, No. 12-1561, 2014 WL 7011916 (2d Cir. Dec. 15, 2014); *see also Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013) (same).

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citations and internal quotation marks omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Id.* "[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather,

adequacy is itself a federal question." *Id.* (citations and internal quotation marks omitted). A federal court "ha[s] an independent duty to scrutinize the application of state rules that bar . . . review of federal claims." *Id.* at 468. "Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised on habeas review only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (citations omitted), *cert. denied*, 134 S.Ct. 439 (2013).

### C.  Harmless Error

If a "[federal] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard*, 406 F.3d at 122 (citations omitted). Asked must be whether the application of the law "had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 115 S.Ct. 992, 994 (1995) (citations and internal quotation marks omitted).

"When a [federal judge in a *habeas* proceeding] has grave doubt about whether a trial error . . . had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the petitioner must win." *Wood v. Ercole*, 644 F.3d 83, 99 (2d Cir. 2011) (citations and internal quotation marks omitted) (holding that petitioner's videotaped statement made after he invoked his right to counsel was wrongfully admitted at trial and not a harmless error).

### V.     Ineffective Assistance of Counsel

### A.  Law

The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right to counsel is "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14

(1970) (emphasis added).  Effective assistance "does not guarantee the right to perfect counsel."

*Burt*, 134 S.Ct. at 18.

### 1.  Standard

Claims of inadequate assistance of counsel are governed by the *Strickland* standard,

which declared that "legal representation violates the Sixth Amendment if it (1) falls 'below an

objective standard of reasonableness,' as indicated by 'prevailing professional norms,' and

(2) the defendant suffers prejudice as a result."  *Chaidez v. United States*, 133 S.Ct. 1103, 1107

(2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  The test is applied to

claims of ineffective assistance of counsel at any stage of the litigation.  *See Hill v. Lockhart*, 474

U.S. 52, 57 (1985).

In *Strickland*, the Supreme Court found that the district court had properly declined to

issue a writ of *habeas corpus*.  *Strickland*, 466 U.S. at 701 (holding trial counsel's performance

at sentencing where defendant received death sentence after initial guilty plea was neither

unreasonable, nor prejudicial).  Counsel, it explained, had not made an objectively unreasonable

choice of litigation strategy by choosing not to request a presentence report, conduct a

psychiatric examination of his client, or seek out character witnesses in preparation for his

client's sentencing hearing.  *Id.* at 699.  The Court emphasized that reasonable strategic choices

by counsel after an appropriate investigation of the facts and law are "virtually unchallengeable."

*Id.* at 690–91.  Those "made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation."  *Id.*  The

responsibility rests with petitioner to "overcome the presumption that, under the circumstances,

the challenged action might be considered sound trial strategy."  *Id.* at 688 (citations and internal

quotation marks omitted).

The decision to rely on the plea colloquy for evidence related to respondent's extreme stress caused by his inability to support his family was found reasonable because it prevented the State from cross-examining character witnesses and presenting psychiatric evidence of its own. *Id.* at 699. Counsel's failure to request a presentence report was not deemed ineffective because the report would have contained information about respondent's criminal history and undermined the claim that he had no significant prior criminal record. *Id.*

The lack of merit regarding the prejudice component of the ineffective assistance of counsel claim was ruled "even more stark." *Id.* at 700. The Court wrote:

> [E]ven assuming the challenged conduct of counsel was unreasonable, respondent suffered insufficient prejudice to warrant setting aside his death sentence. . . . [T]here [was] no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances [of the three capital murder crimes] outweighed the mitigation circumstances and, hence, the sentence imposed.

*Id.* at 698–700.

The performance and prejudice prongs of *Strickland* may be addressed in either order. *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001) (granting writ of *habeas corpus* because counsel's cumulative errors—including failure to effectively challenge only evidence of physical sexual abuse and expert testimony based on unnamed available studies—amounted to constitutional ineffectiveness and prejudiced petitioner); *see also Hinton v. Alabama*, 134 S.Ct. 1081, 1089 (2014) (per curiam) (holding that defense counsel's failure to request additional

funds to replace an inadequate expert amounted to deficient performance) ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (citations and internal quotation marks omitted)).

The standard for evaluating counsel's assistance is a "most deferential one[.]" *Harrington*, 562 U.S. at 105 (holding that a state court's acceptance of counsel's decision not to consult blood evidence experts was not an unreasonable application of *Strickland*). State court determinations are given heightened deference under section 2254(d) of title 28 of the United States Code. *See supra* Part IV.B. A federal court reviewing a state court's determination regarding ineffective assistance of counsel has been characterized as "doubly" deferential by the Supreme Court. *Harrington*, 562 U.S. at 105. When applying section 2254(d), "the question is not whether counsel's actions were reasonable[,]" but "whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Id.* (emphasis added).

### 2. Application of Standard by Court of Appeals for the Second Circuit

The Court of Appeals for the Second Circuit has explained that "[i]n assessing counsel's performance . . . , we must apply a heavy measure of deference to counsel's judgments." *Griener v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (citations and internal quotation marks omitted) (holding that counsel's decision not to call unfriendly witnesses to suggest that a third party had motive to kill the victim was not deficient); *see also, e.g.*, *Lopez v. Rivera*, 157 F. App'x. 358, 360 (2d Cir. 2005) (summary order) (finding that state court reasonably concluded counsel rendered meaningful assistance, and that there was no evidence that a strategy pursuing an alibi defense would have supported defendant's claim).

A counsel's performance will be found unreasonable or ineffective *only* "when it is so deficient that it falls outside the wide range of professionally competent assistance." *Kovacs v.*

*United States*, 744 F.3d 44, 50 (2d Cir. 2014) (citations and internal quotation marks omitted) (holding that "no reasonable jurist could find a defense counsel's affirmative misadvice as to the immigration consequences of a guilty plea to be objectively reasonable"); *Rivas v. Fischer*, 780 F.3d 529, 549–51 (2015) (holding state court unreasonably applied *Strickland* test because counsel's failure to investigate expert testimony, which called into doubt the central forensic evidence linking the inmate to the crime, was ineffective assistance and prejudicial to the defendant).

A petitioner must go beyond "convinc[ing] a federal habeas court that, in its independent judgment[,] the state court applied *Strickland* incorrectly." *Cox v. Donnelly,* 387 F.3d 193, 197 (2d Cir. 2004) (citations and internal quotation marks omitted) (finding counsel's failure to object to unconstitutional jury instruction objectively unreasonable and prejudicial). Petitioner "must show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.*

### 3. Application of Standard by District Courts in the Second Circuit

Second guessing from the federal bench is seldom appropriate with respect to the tactical and strategic choices made by counsel in the heat of trial. Courts in this district have routinely refused to find ineffective assistance of counsel given the wide range of conduct considered reasonable. *See, e.g.*, *Melendez v. Heath*, No. 10-CV-5698, 2014 WL 2440499, at *5 (E.D.N.Y. May 30, 2014) (finding "counsel's failure to move to dismiss the course of sexual conduct charges on the basis of failure to prove the three-month duration element was not a waiver of 'a particularly strong and clear' claim"); *Gordon v. Bradt*, No. 09-CV-4383, 2014 WL 1237370, at *8 (E.D.N.Y. Mar. 25, 2014) (no prejudice found by counsel's alleged failure to effectuate desired grand jury testimony); *Garcia v. Smith*, No. 11-CV-1332, 2014 WL 905544, at *20–21 (E.D.N.Y. Mar. 7, 2014) ("Counsel's decision not to argue that [petitioner] was the 'operator' of

the car was a tactical one that cannot give rise to an ineffectiveness claim."); *Johnson v. Taylor*, No. 08-CV-2442, 2010 WL 2735770, at *4–6 (E.D.N.Y. July 8, 2010) (denying *habeas* relief where it was alleged that counsel failed to adequately investigate the identity of the individual who owned the residence where petitioner was arrested, refrained from conducting inapplicable research, and waived his client's grand jury testimony).

If counsel was actively engaged, or succeeded, in various aspects of a defense, ineffective assistance is rarely found. *See, e.g.*, *Battee v. Phillips*, No. 04-CV-4334, 2010 WL 2026443, at *6 (E.D.N.Y. May 19, 2010) (considering acquittal of one charge as evidence of effective counsel); *Caimite v. Fischer*, No. 05-CV-3324, 2009 WL 236917, at *5–6 (E.D.N.Y. Feb. 2, 2009) (trial counsel considered effective where he engaged in pretrial discovery, cross-examined witnesses effectively, delivered cogent opening, made appropriate objections and motions during trial, and made appropriate charge requests and sound closing arguments).

## B. Application

Petitioner's allegations regarding his counsel's numerous and cumulative errors do not rise to the level of a Sixth Amendment violation. *See supra* Part III.H; *see also* Pet'r's *Habeas* Br. 21–23. Neither prong of the *Strickland* test is satisfied. *See supra* Part IV.A.1. The state court did not apply the *Strickland* standard in an objectively unreasonable manner. *See supra* Part IV.A.2–3. No objective lack of reasonableness on the part of counsel is detected. *See supra* Part III. No sufficient prejudice to warrant setting aside the conviction exists. *Id.*

All nine of petitioner's ineffective assistance of counsel claims amount to a critique of counsel's litigation strategy. *See supra* Part III.H. None of the claims rise to a standard of deficient representation falling "outside the wide range of professionally competent assistance." *See supra* Part IV.A.2. Trial counsel's assistance was effective as it resulted in the acquittal of multiple charges. *See supra* Parts II, III & V.A.3.

Petitioner's first argument regarding counsel's failure to permit him to testify before the grand jury and dismiss the indictment is meritless. Any defects with respect to the grand jury process are cured after a conviction in front of a petit jury under a heightened standard of proof. *See infra* Part VI.A.

His second argument, focusing on counsel's failure to conduct an adequate pre-trial investigation and build an alibi defense, fails. Arguing ineffective assistance of counsel, petitioner presented the following alibi defense to the state court on the motion to vacate his conviction:

> On May 14, 2007[,] [petitioner] was in area of 150th[] Street and 58th Road looking at a home for sale. [He] knocked on the door and received no answer. [Petitioner] knocked on the neighbor[']s door and spoke with an Asian woman. This woman gave [petitioner] a phone number to reach the owner[.] [He] thanked the woman for her help, [and] headed back to his friend[']s S.U.V. . . . As [he and his friend] were leaving, [petitioner] noticed that someone left a back-pack on the floor, near the trunk of a car [p]arked across the street. [Petitioner] jumped out of the S.U.V., walked over to the [b]ack-[p]ack; and picked it up, to see if there was an address or number on it to return it to its owner. As [petitioner] was looking at the bag[,] a car skid up and three (3) men with guns in hand[] ran at [petitioner][.] [O]ut of fear [petitioner] ran about 100 yards when one of the men chasing [Petitioner] fell on the ground and his gun skid on the floor about five (5) feet from his hand. [Petitioner] looked down and heard "drop the weapon or will sho[o]t". At which time[,] [petitioner] lifted his hands into the air to show he had no weapon.

*See* Occhione Aff. 7–8. He raised the same argument to this court. *See* Hearing Transcript, June 9, 2015, No. 14-CV-3637. Having considered the alibi defense in light of the entire record, this court finds that the state court assessed petitioner's ineffective assistance of counsel claim and his alibi defense in accordance with Supreme Court precedent and in light of the evidence. The arresting officers testified to witnessing petitioner climb over the fence, *and* found him with a

crowbar and the victim's property on his person.  *See supra* Part II.  Relief is not merited.  *See supra* Parts IV & V.A.

No basis exists for petitioner's third claim that his counsel failed to permit him to testify at trial.  *See supra* Part V.A.3.  The trial transcript does not indicate that petitioner voiced any objection when counsel rested his case or when counsel affirmatively stated that petitioner would not be exercising his right to testify.  *See* Trial Tr. 701:23–702:2; *see also id.* at 756:13–21 (charge provided to jury at request of petitioner's counsel highlighted that decision to not testify is not a factor from which any inference unfavorable to the petitioner may be drawn).   In view of defendant's criminal record, cross-examination would have been deleterious.

The claim regarding a charge for a crime vacated on appeal is of no moment.  *See supra* Part III.B.

Petitioner's remaining ineffective assistance of counsel claims—stating that counsel failed to object at specific points during the trial, pursue sanctions, move to dismiss the burglary count, and adequately cross-examine police officers about inconsistent statements—cannot succeed.

The contention that his counsel did not effectively bring to light evidence tampering is not corroborated by the trial record.  *See supra* Part III.E.

His sixth claim is mooted because the removal of the word "remained" from the indictment benefitted petitioner's case.  *Id.*

The tainted jury claim lacks merit because the trial court removed juror number nine prior to opening statements, and confirmed with each of the remaining jurors and alternates that they were impartial.  *Id.*

The allegation that petitioner was coerced into signing the "Miranda Warning," his eighth ineffective assistance of counsel claim, is unsubstantiated by the evidence.  *Id.*; *see also supra* Part III.C.3.

Petitioner cannot make out his final claim that his counsel should have submitted a motion to dismiss the charge of burglary in the second degree for lack of proof.  *See supra* Part II.  The evidence in the record with respect to petitioner's guilt for the crimes charged is overwhelming.  *Id.*

Prejudice sufficient to warrant setting aside the conviction cannot be established.

All ineffective assistance of counsel claims are denied.

## VI.    Denial of Right to Testify Before Grand Jury

### A.  Law

The Fifth Amendment right to a grand jury presentation in felony cases is not applicable to the States.  *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990).  "Once a state itself creates such a right, however, due process may prevent it from causing the right to be forfeited in an arbitrary or fundamentally unfair manner."  *Michael v. Dalsheim*, No. 90-CV-2959, 1991 WL 99368, at *10 (E.D.N.Y. May 22, 1991).

Claims of deficiencies in state grand jury proceedings are generally not cognizable in a *habeas corpus* proceeding in federal court.  Any grand jury deficiencies are rendered harmless by a petit jury conviction assessing petitioner's guilt under a heightened standard of proof.  *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (holding that alleged use of misleading and prejudicial evidence in front of grand jury were cured in trial before petit jury, which convicted *habeas* petitioner of manslaughter under heightened standard of proof); *Venable v. Walsh*, No. 05-CV-0084, 2009 WL 750230, at *8 (E.D.N.Y. Mar. 19, 2009) ("[Defendant]'s conviction renders any failure to allow him to testify before the grand jury harmless error.  His grand jury

claim is not cognizable on habeas review."); *Montalvo v. Annetts*, No. 02-CV-1056, 2003 WL 22962504, at *17–18 (S.D.N.Y. Dec. 17, 2003) (same); *see also Bulla v. Lempke*, No. 06-CV-1156, 2006 WL 2457945, at *11 (S.D.N.Y. Aug. 25, 2006) ("[A]ny right to testify before a grand jury arises only under state law and is thus not cognizable on habeas review" (collecting cases)); *Cates v. Senkowski*, No. 02-CV-5957, 2003 WL 1563777, at *3 (E.D.N.Y, Mar. 17, 2003) (same); *Green v. Artuz*, 990 F. Supp. 267, 273 n.8 (S.D.N.Y. 1998) (same).

### B. Application

Petitioner erroneously insists that he is entitled to *habeas* relief because he was not permitted to testify before the grand jury on May 18, 2007. *See* Pet'r's *Habeas* Br. 21. He asserts that this failure deprived him of his statutory right to testify under section 190.50 of New York's Criminal Procedure Law. *Id.* Having been convicted by a petit jury, petitioner has no claim. *See supra* Part III.E & Part VI.A.

No sound practitioner would have put defendant before the grand jury in view of the strong evidence against him. Should he have decided to testify, inconsistent statements before the grand jury would have plagued him. Petitioner's claim has no credibility.

The claim regarding his right to testify before the grand jury is dismissed.

### VII.  Reverse *Batson* Challenge

### A. Law

A state's privilege in criminal trials to strike individual jurors through peremptory challenges is subject to Supreme Court equal protection jurisprudence. *See Batson v. Kentucky*, 476 U.S. 79, 96 (1985). Under the *Batson* rule, peremptory challenges cannot be used to exclude jurors based on "race, ethnicity, or sex." *Rivera v. Illinois*, 556 U.S. 148, 153 (2009); *see also Miller-EL v. Dretke*, 545 U.S. 231 (2004) ("[F]or more than a century, this Court consistently and repeatedly has reaffirmed that racial discrimination by the State in jury selection offends the

Equal Protection Clause." (citations and internal quotation marks omitted)); *JEB v. Alabama ex rel. T.B.*, 511 U.S. 127, 128 (1994) ("[P]otential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice."); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991) ("Recognizing the impropriety of racial bias in the courtroom, we hold the race-based exclusion violates the equal protection rights of the challenged jurors.").

Referred to as a "reverse Batson challenge," the *Batson* rule has been extended to the use of peremptory challenges by criminal defendants. *Georgia v. McCollum*, 505 U.S. 42, 59 (1992) ("[N]either the Sixth Amendment right nor the attorney-client privilege gives a criminal defendant the right to carry out through counsel an unlawful course of conduct."). "[T]he exercise of a peremptory challenge by any party, including a defendant in a criminal case, constitutes state action because it is the exercise of the power to choose 'the institution of government on which our judicial system depends.'" *United States v. Martinez*, 621 F.3d 101, 106 (2d Cir. 2010) (quoting *McCollum*, 505 U.S. at 54).

While a criminal defendant always retains the possibility of *habeas* relief for a violation of the right to an impartial jury, a trial court's good faith error in denying a peremptory challenge to a prospective juror does not deprive a defendant of the right to a fair trial. *See Rivera*, 556 U.S. at 158 (2009). The Court of Appeals for the Second Circuit has found that a defendant's right to exercise a peremptory challenge is a matter of state law that does not implicate federal constitutional rights. *See, e.g.*, *Brown v. Conway*, 483 F. App'x. 593, 594 (2d. Cir. 2012) (summary order) ("[petitioner's] sole claim that the trial court erroneously rejected his exercise of a peremptory challenge cannot form the basis for federal habeas relief"), *cert. denied,* 133 S.Ct. 543 (2012); *Hayes v. Conway*, No. 07-CV-3656, 2009 WL 320188, at *2 (2d Cir. Feb. 10,

2009) (summary order) ("Because there is no clearly established federal law as determined by the Supreme Court . . . , the state court's denial of two . . . peremptory challenges cannot provide a basis for federal habeas relief.").  District courts in the circuit have followed suit in their rulings.  *See Pinto v. Walsh*, No. 09-CV-05419, 2014 WL 2594416, at *2 (E.D.N.Y. June 10, 2014) ("[T]he state court's denials of . . . peremptory challenges based on race cannot provide a basis for federal habeas relief." (citations and internal quotation marks omitted)); *Boston v. Brown,* No. 10-CV-01494, 2014 WL 726683, at *12 (E.D.N.Y. Feb. 24, 2014) (rejecting challenges to a reverse *Batson* ruling on Sixth Amendment and Equal Protection grounds because "the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution" (quoting *Rivera*, 556 U.S. at 158)).

In response to "ordinary" *Batson* challenges, the Supreme Court has ruled that a federal *habeas* court may grant a petition only where the state court decision was "an unreasonable determination of the facts in light of the evidence presented in the state court."  *Rice v. Collins*, 546 U.S. 333, 339 (2006) (citations and internal quotation marks omitted); *see also supra* Part IV.B.

> [R]ace-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's firsthand observations of even greater importance. . . .  We have recognized that these determinations of credibility and demeanor lie peculiarly within a trial judge's province, and we have stated that in the absence of exceptional circumstances, we would defer to the trial court.

*Snyder v. Louisiana,* 552 U.S. 472, 477 (2008) (citations and internal quotation marks omitted); *see also DeVorce v. Philips*, No. 13-CV-3205, 2015 WL 1320775, at *2 (2d Cir. Mar. 25, 2015) (summary order) (giving "great deference" to both prosecutor's and prospective juror's in-court demeanor and holding that trial court did not unreasonably credit prosecution's proffered race

neutral reason for peremptory strike); *Messiah v. Duncan*, 435 F.3d 186, 196 (2d Cir. 2006) ("[D]eference stems from the fact that the best evidence . . . will often . . . be the demeanor of the attorney who exercises the challenge, and such evaluations of demeanor lie peculiarly within a trial judge's province." (citations and internal quotation marks omitted)). "[E]ven if reasonable minds reviewing the record might disagree about the prosecutor's credibility, it is inappropriate on habeas review to supersede the trial court's credibility determination." *Messiah*, 435 F.3d at 200 (citation and internal quotation marks omitted).

### B. Application

Petitioner incorrectly maintains that the striking of his peremptory challenge entitles him to *habeas* relief. *See* Pet's *Habeas* Br. 20. Asserted is that his right to due process was violated when the trial court sustained a reverse *Batson* objection made by the state in response to defense counsel's peremptory challenge of a juror. *Id.* The state court's decision regarding the peremptory challenge exercised against a juror of Indian descent was not an unreasonable determination of the facts in light of the evidence presented. *See supra* Part III.D. No evidence has been proffered suggesting that the denial of the peremptory challenge violated petitioner's right to an impartial jury. *See supra* Part VII.A.

The reverse *Batson* claim is dismissed.

### VIII. Sentencing Persistent Violent Felony Offenders and *Apprendi* Doctrine

### A. Law

New York Penal Law provides that a persistent violent felony offender is a person previously convicted of two or more predicate violent felonies pursuant to section 70.04(b). *See* N.Y. Penal Law § 70.08(1)(a) (McKinney 2006).

In *Apprendi*, the Supreme Court held: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added); *Alleyne v. United States*, 133 S.Ct. 2151, 2168 (2013) (same). The narrow exception regarding "prior convictions" exists, the Court has explained, because the procedural safeguards attendant to prior convictions mitigate Sixth Amendment concerns. *Apprendi*, 530 U.S. at 488.

The Court of Appeals for the Second Circuit, following *Apprendi*, has ruled that evaluation of a defendant's propensity for recidivism is the province of judges, not juries. *See, e.g.*, *United States. v. Santiago*, 268 F.3d 151, 156 (2d Cir. 2001) (finding prior convictions considered as "sentencing factor" for purposes of sentence enhancement under section 924(a) of title 18 of the United States Code rather than as an element of the offense). *See also, e.g.*, *Thompson v. Ercole*, No. 07-CV-3788, 2011 U.S. Dist. LEXIS 125110, at *14 (E.D.N.Y. Oct. 28, 2011) (explaining that task of finding prior convictions and the "who, what, when, and where of a prior conviction" belongs to judges).

Section 70.08 of New York Penal Law falls within the prior conviction exception to *Apprendi*. *See, e.g.*, *Washington v. Graham*, 355 F. App'x. 543, 545 (2d Cir. 2009) (summary order); *Kelly v. Lee*, No. 11-CV-3903, 2014 WL 4699952, at *13 n.12 (E.D.N.Y. Sept. 22, 2014) ("The Court notes that courts in this Circuit routinely reject *Apprendi* challenges to New York's persistent violent felony offender statute." (citing *Chambers v. Conway*, No. 09-CV-2175, 2011 WL 2226956, at *12 (S.D.N.Y. June 8, 2011)); *Adelman v. Ercole*, No. 08-CV-3609, 2010 WL 3210718, at *5 (E.D.N.Y. Aug. 12, 2010) (same); *Boutte v. Poole*, No. 07-CV-8412, 2008 WL 3166696, at *3 n.5 (S.D.N.Y. Aug. 4, 2008) (collecting cases).

## B. Application

Petitioner wrongly contends that the sentencing court's use of section 70.08 of New York's Penal Law entitles him to *habeas* relief. *See supra* Parts III.E & VIII.A, *see also* Pet'r's *Habeas* Br. 21. The sentencing court's consideration of prior convictions falls squarely within the exception articulated by the Supreme Court in *Apprendi*. *See supra* Part VIII.A.

Dismissed is petitioner's claim that section 70.08 of New York Penal Law is unconstitutional.

## IX. Conclusion

The petition for a writ of *habeas corpus* pursuant to section 2254 of title 28 of the United States Code is denied.

A certificate of appealability is denied. The claims are frivolous and the evidence of guilt overwhelming. The defendant had a fair trial.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: June 24, 2015
Brooklyn, New York